112

UNITED STATES, Appellee,

v.

Arthur L. THORNTON, Jr., Specialist
Four, U.S. Army, Appellant.

No. 62,447.
CM 8801290.

U.S. Court of Military Appeals.

Submitted Oct. 31, 1990.

Decided Feb. 26, 1991.

For Appellant: *Lieutenant Colonel Russell S. Estey, Captain Timothy P. Riley, Captain Jay S. Eiche* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Kenneth H. Goetzke, Jr., Captain Randy V. Cargill* (on brief); *Major Martin D. Carpenter, Captain George R. Johnson.*

*Opinion of the Court*

COX, Judge:

On his pleas, appellant was convicted by general court-martial of two specifications of false swearing, as well as one specification each of forgery and wrongful possession of a duplicate military identification card in his name, violations of Articles 123 and 134, Uniform Code of Military Justice, 10 USC §§ 923 and 934, respectively. The court-martial sentenced appellant to be confined for 2 years, to forfeit all pay and allowances, to pay the United States a fine of $5,000.00, and to be discharged from the Army with a bad-conduct discharge. Acting pursuant to a pretrial agreement, the convening authority disapproved the fine but approved the remainder of the sentence.

In its initial consideration of this case, the Court of Military Review affirmed the findings and sentence in a memorandum opinion. Appellant sought timely review of that decision. We set aside the decision of the court below and returned the record to

the Judge Advocate General of the Army for resubmission of the case to that court for consideration in light of our then-recent opinion in *United States v. Antonitis,* 29 MJ 217 (CMA 1989). *United States v. Thornton,* 29 MJ 332 (CMA 1989) (summary disposition).

On further review the Court of Military Review determined that *Antonitis* was not applicable to the facts of this case. Appellant again petitioned this Court for a grant of review, and we agreed to consider whether the review court correctly applied our precedent.

The Government's case during the presentencing phase of the trial was directed toward a demonstration of the impact of appellant's crimes on other soldiers and the unit. To that end it called the victim; appellant's supervisor, Sergeant Kim; and his company commander, Captain Peterson. Sergeant Kim testified that appellant's military occupational specialty required a top-secret security clearance, based on a special background investigation. Captain Peterson related that, when the investigation into appellant's offenses commenced, he suspended appellant's local access to classified materials. As a result, appellant was not working in his military occupational specialty. Captain Peterson also told the court-martial that he had notified the Central Clearance Facility of the action and had sent in a report of the immediate action taken in the case.

At that point trial counsel asked Captain Peterson what would happen in appellant's case. Over defense objections as to relevance and a lack of knowledge, Peterson was allowed to state that, in his experience (which included some 6 years' service in the military intelligence field) the clearance would normally be revoked. Defense counsel pressed the matter on cross-examination, and Peterson conceded that he could only render his opinion as to the probability of revocation.

Following this testimony, Captain Peterson described appellant's training in the military intelligence field. This included 1 year of instruction at the Defense Language Institute and an additional year with the Air Force to specifically train him for his particular military occupational specialty. Finally, he told the court-martial that the crimes had an adverse impact on the morale of the company.

As did the Court of Military Review, we find this situation to differ from *Antonitis.* Therein Sergeant Antonitis' commander testified that she could not continue in the service without a security clearance. The Government specifically offered the testimony on the issue as to whether she should be retained in the Army. 29 MJ at 219.

By contrast Captain Peterson's testimony did not discuss retention or even appellant's potential for rehabilitation. Rather, it merely recited the fact that appellant was no longer permitted access to classified materials based on Peterson's action following discovery of the offense. In conjunction with his testimony concerning the time and effort expended by the Army in appellant's training, it gave the members some insight into the impact of the offenses on the unit's mission. Such evidence may be a relevant consideration in sentencing an accused under RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984, in some unique situations such as the one we have before us. *United States v. Antonitis,* 29 MJ at 220; *accord United States v. Fitzhugh,* 14 MJ 595 (AFCMR 1982), *pet. denied,* 15 MJ 165 (1983).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.